# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **AMMD, LLC,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | **No. 1-20-CV-00200-RP** |
| | § | |
| **VITA-GEN, INC.,  VITA-GEN** | § | |
| **LABORATORIES, LLC,** | § | |
| *Defendants* | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:   THE HONORABLE ROBERT PITMAN
      UNITED STATES DISTRICT JUDGE

Before the Court is Plaintiff AMMD, LLC's Motion for Summary Judgment, Dkt. 99; Defendants Vita-Gen, Inc. and Vita-Gen Laboratories, LLC's (collectively, "Vita-Gen") Motion for Partial Summary Judgment, Dkt. 100; and all related briefing. After reviewing these filings and the relevant case law, the undersigned recommends denying AMMD's motion and granting Vita-Gen's motion.

## I.      BACKGROUND

The parties' motions arise from an underlying breach of contract lawsuit against Vita-Gen for alleged material breaches of a manufacturing supply agreement between Vita-Gen and AMMD related to quality control and shipping issues it had with products manufactured by Vita-Gen. Dkt. 89, at 1, 3-14. Vita-Gen brought counterclaims for AMMD's alleged failure to fully pay balances owed to Vita-Gen and for failure to indemnify Vita-Gen. Dkt. 95, at 38-40. After communicating about

settlement, filing status reports to the Court, and drafting an Agreed Final Judgment document, AMMD moved for entry of Rule 68 Offer of Judgment. Dkt. 81, at 1. AMMD argued that the parties' Agreed Final Judgment document was an enforceable Rule 68 Offer of Judgment because it was negotiated and agreed to by both parties, executed by AMMD, and Vita-Gen expressed its intent to sign. *Id.* Vita-Gen responded that its communications with AMMD as reflected in emails between the parties and the Agreed Final Judgment document were simply settlement negotiations "to determine whether the parties could come to a mutual meeting of the minds as to the terms of a proposed Consent Judgment." Dkt. 83, at 2. AMMD's motion for entry of Rule 68 Offer of Judgment and its request, in the alternative, for leave to amend its complaint were referred to the undersigned for report and recommendation.

Consistent with the plain language of Federal Rule of Civil Procedure 68, the undersigned found that Rule 68 was "inapplicable to the parties' dispute about whether their communication and the resulting Agreed Final Judgment constituted a Rule 68 Offer of Judgment" because Rule 68 is a procedural mechanism applicable once judgment is finally obtained. Dkt. 86, at 8.[1] Accordingly, the undersigned

---

[1] Under Federal Rule of Civil Procedure 68, "at least 14 days before the date set for trial, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued. If, within 14 days after being served, the opposing party serves written notice accepting the offer, either party may then file the offer and notice of acceptance, plus proof of service." Fed. R. Civ. P. 68. "The clerk must then enter judgment. … An unaccepted offer is considered withdrawn …." *Id.* Lastly, "if the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made." *Id.* Under Rule 68, if the plaintiff "accepts the offer, either party may file the offer and acceptance with the clerk of the court, who shall then enter judgment." *Ramming v. Nat. Gas Pipeline Co. of Am.,* 390 F.3d 366,

recommended that AMMD's Motion for Entry of Rule 68 Judgment, Dkt. 81, be denied. Dkt. 86, at 10-11. The undersigned also recommended granting AMMD's alternative request for leave to amend its complaint so that AMMD could assert a breach of contract claim based the parties' settlement negotiations and AAMD's conduct with respect to the Agreed Final Judgment document. *Id.* The District Court adopted the undersigned's report and recommendation and AMMD filed its Second Amended Complaint. Dkts. 88, 89.

AMMD's Second Amended Complaint at Count 5 asserts a breach of contract claim alleging that Vita-Gen "agreed to settle the lawsuit on specific terms, which are set forth in the Stipulated Judgment entry"; the offer was presented to AMMD by Vita-Gen's attorneys who had a authority to bind Vita-Gen; AMMD accepted the terms of Vita-Gen's offer and signed the offer; there was a meeting of the minds and substantial negotiation between the parties; and each party consented to the final terms of the agreement as of July 1, 2022, if not earlier. Dkt. 89, at 24. AMMD argues Vita-Gen has materially breached the agreement by "refusing to execute the

---

370-71 (5th Cir. 2004) (citing Fed. R. Civ. P. 68). "The court generally has no discretion whether or not to enter the judgment." *Id.* at 370. "A Rule 68 Offer of Judgment is usually considered self-executing." *Id.* There are limited circumstances in which courts have the authority to review an offer of judgment, for instance, "in a class action, pursuant to Rule 23, a court is charged with the authority to accept a settlement; and in a case seeking injunctive relief, a court is vested with the ultimate power to enter an injunction." *Id.* (citing 12 Wright & Miller, Fed. Prac. & Proc. § 3005 (2d ed. 1997)). "Outside of those limited circumstances, a court must enter a judgment accepted by the parties. *Id.*

document and allow judgment to be entered in AMMD's favor pursuant to the terms set forth in the Stipulated Judgment Entry." *Id.*

The parties each move for summary judgment as to Count Five of the Second Amended Complaint. Dkts. 99; 100. AMMD argues that Vita-Gen offered to settle the lawsuit "by consenting to a judgment in AMMD's favor in the amount of 1.85 million" which AMMD accepted. Dkt. 99, at 7. AMMD states that Vita-Gen's counsel "represented that the Parties' agreement was final" and that "the only remaining task was for Defendants' representative to execute the Agreed Final Judgment Entry so it could be filed with the Court" which Defendants then refused to do "unless AMMD agreed not to execute on the very judgment it offered to AMMD." *Id.* AMMD states that while Vita-Gen's attempt to "revoke consent of the terms after acceptance is improper," the attempt to revoke consent does not destroy the meeting of the minds between the parties because the Agreed Final Judgment Entry document contained all the essential terms. *Id.* at 7, 24. AMMD claims that it is entitled to judgment in its favor on its breach of contract claim and "enforcement of the parties' settlement agreement." *Id.* at 7. Vita-Gen responds that "no written settlement agreement was ever finalized let alone executed by all parties" and that "there was no meeting of the minds on the material terms of the proposed Consent Judgment, and thus, no enforceable consent judgment." Dkt. 102, at 1, 10.

Vita-Gen also moves for summary judgment on Count Five arguing that AMMD cannot satisfy the elements of a breach of contract claim because the parties' resolution was "in principle" only, and there was no meeting of the minds with respect

to material terms, thus no enforceable agreement existed. Dkt. 100, at 4-6. AMMD responds that Plaintiffs' argument rests on facts occurring after July 1, 2022, at which point the parties' enforceable agreement had already been formed. Dkt. 101, at 3. AMMD argues that Vita-Gen does not dispute the facts leading up to and immediately following July 1, 2022, and that communications after July 1, 2022, were "just…bad faith attempt[s] to renegotiate" but do not evidence a lack of mutual assent or "destroy the meeting of the minds that existed as of July 1, 2022." *Id.* at 15.

## II.   LEGAL STANDARD

Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

### III.     DISCUSSION

### A.     Undisputed Summary Judgment Facts

Vita-Gen's counsel, Erica Yitzhak, emailed AMMD's counsel, Kyle Johnson, on May 6, 2022 stating, "I spoke with our clients and they are agreeable to a settlement of a judgment for $1.85M against both Vita-Gen entities as long as general releases are executed in favor of Erik and Nick [Vita-Gen principals] individually and they will execute releases in favor of AMMD and Amy [AMMD's principal]. Please let me know by the end of the day today if we have an agreement." Dkt. 99-1, at 7. The next

day Johnson replied that he'd spoken with his client and AMMD was "in agreement on the Consent Judgment Entry per the following terms." *Id.* at 8. Johnson then listed terms concerning stipulated judgment in AMMD's favor, reimbursement of monies belonging to AMMD and held by Defendants, and stipulations that the Court would retain jurisdiction for the purposes of enforcing the terms of the agreement, among others. *Id.* at 8. Johnson also stated, "I can put together a draft if we are in agreement [on AMMD's proposed terms]." *Id.* at 9.

Three days later, Yitzhak responded that she would discuss the proposed terms with her client and get back to Johnson. *Id.* at 11. Johnson wrote back the next day asking for an update and stated that he had a draft prepared, Yitzhak's co-counsel Kevin Crocker responded stating that Yitzhak would respond shortly regarding the proposed terms and stipulations and asked to see a draft of the agreement in the meantime. *Id.* a 10. Crocker also stated that he wanted to see the draft because the parties were set to appear before the undersigned in regard to AMMD's motion in limine  two hours from the time Crocker sent his email and "he would also like to get the parties' relieved of their upcoming Rule 16(f)&g pre-trial filing submissions requirements and deadlines sooner rather than later." *Id.* at 10. The hearing was canceled that same day. *See* Dkt. 71. Johnson sent a draft of the "Agreed Final Judgment Entry As to Defendants Vita-Gen, Inc. and Vita-Gen Laboratories, LLC" reflecting each of the settlement terms proffered by the parties up to that point. Dkt. 99-1, at 1.

Yitzhak replied with Vita-Gen's feedback which consisted of minor changes (*e.g.*, adding the word "defendants" throughout the document), except for the request to delete a stipulation concerning future proceedings. Dkt. 79-8, at 1. While Vita-Gen was still working on incorporating its emailed edits into a redline Word document version of the Agreed Final Judgment Entry draft, it agreed to report to the Court that there was a resolution of the parties' dispute and consented to the filing of a "Joint Notice of Advisory" requesting a stay of the proceedings on that basis. Dkt. 79-9, at 2-9; Dkt. 72. Based on the parties' representation that they'd "reached a resolution in principle resolving all claims between the Parties" and were "finalizing a Motion for Entry of Final Judgment and Agreed Final Judgment," the District Court canceled the pretrial conference, jury selection, and trial and stayed the case through June 24, 2022. Dkts. 72, at 1; 73; 74. Over the next month and a half, the parties continued to make minor revisions to the Agreed Final Judgment Entry draft and jointly requested an extension of the stay as "two (2) terms [were] left to be finalized." Dkt. 75, at 2. The District Court granted a stay through July 8, 2022.

The parties arrived at a finalized version of the document by July 1, 2022, when Johnson wrote to Crocker and Yitzhak stating, "I made your proposed changes…. Please have your clients execute today so we can get this filed." Dkt. 99-1, at 105-06. Crocker then wrote to Yitzhak, with Johnson cc'ed:

> Please see [Johnson's] email (below), along with the attached revised "Agreed Final Judgment Entry as to Defendants Vita-Gen, Inc. and Vita-Gen Laboratories, LLC" that has been executed by Dr. Myers [AMMD's principal] on behalf of AMMD. I believe this captures the final changes/suggestions you and I had for Kyle earlier this week…. [P]lease do get this over to Eric [Vita-Gen's principal] ASAP TODAY for him to

execute on behalf of the Judgment Defendants and return the fully executed Agreed Final Judgment back to you so that you can get it to [Johnson]…we must get this fully executed Consent Judgment back to [Johnson] in time for him to file with the Court by … July 8th.

*Id.* at 105.

Johnson checked in one week later asking if there had been an update on Vita-Gen's principal signing the agreement and reminding Vita-Gen's counsel that the document needed to be filed with the Court by July 8, 2022. Dkt. 79-3, at 2. On July 8, 2022, Yitzhak unilaterally moved for a fourteen-day extension of the July 8, 2022, stay and represented that "there are only two terms left to be finalized." Dkt. 76, at 2. On July 22, 2022, Yitzhak emailed Johnson to tell him "our client [Vita-Gen] is signing shortly and I will email the agreement to file with the court." Dkt. 79-3, at 1.

Vita-Gen sought AMMD's approval to extend the stay deadline yet again and sent a draft of the motion to extend for AMMD's review. Dkt. 99-1, at 122. The draft represented that "Vita-Gen is still reviewing two (2) terms of the Plaintiff's proposed agreement." *Id.* AMMD refuted this characterization, stating AMMD "accepted Vita-Gen's changes to the Judgment Entry, which was negotiated by all parties, leaving no further negotiations, or discussions on any points." *Id.* AMMD requested that "the Motion [for extension of the stay] needs to state that Plaintiff has executed the Agreed Final Judgment and submitted it to Defendants' counsel. Plaintiff and its counsel is waiting upon Defendants to execute per the terms of the Parties' Agreement." *Id.*

Then, for the first time Yitzhak explained the two terms that were holding up resolution of the Agreed Judgment Entry draft. *Id.* at 119. The first term pertained to who would send the monies belonging to AAMD held by Vita-Gen; Yitzhak

9

requested that, since the monies had been tendered to Yitzhak's firm, "upon execution [of the agreement] … [the monies] will be sent to [AMMD]" from the firm. *Id.* The second issue was that Vita-Gen wanted to "add clarifying language that [AMMD] understands the Judgment is uncollectable and as such will not pursue collection efforts post [Vita-Gen's] dissolution, including an involuntary bankruptcy petition." *Id.* Yitzhak then stated, "neither change materially alters the agreement." *Id.*  As to the second term, Johnson wrote back "we don't agree." *Id.*

The next day, Yitzhak reiterated "I believe we can wrap this up" so long as AAMD agreed to add that AAMD "understands that Vita-Gen laboratories LLC and Vitagen Inc are being dissolved due to financial insolvency and as such AAMD, Dr. Myers or anyone associated with this lawsuit will not file an involuntary bankruptcy petition against either of the Vita-Gen entities." Dkt. 99-1, at 129. Johnson responded:

> We are not renegotiating the terms of the Agreement. We accepted your clients' proposed revisions to the Judgment Entry and signed. [Crocker] can confirm the deal was done…. Your client needs to sign the Agreement. Otherwise, we are prepared to move to enforce the Agreement and seek fees for doing so. Moreover, the language you want to include is unenforceable in bankruptcy court. The statutory protections set forth in the Bankruptcy Code protecting debtors and creditors preempt any contractual terms. Therefore, please have your client sign immediately.

*Id.* at 128.

After being asked for an update the next day, Yitzhak responded "I have a call with our clients … tomorrow. I will update you on the status of the signed agreement tomorrow afternoon." *Id.* at 132. The next day Yitzhak wrote "I spoke with our clients at great length this morning and believe we are good to go. I will have confirmation

tomorrow morning." *Id.* at 131. All further communications in the record between the parties' concern: adding the language concerning involuntary bankruptcy petition to the agreement, Vita-Gen making a Rule 68 Offer of Judgment, and AAMD's filing of a Motion to Enforce the Agreed Judgment Entry as a Rule 68 Offer of Judgment. Dkts. 100-8, at 2; 100-10, at 2. Vita-Gen filed a status report asking to be put back on to the Court's trial docket because negotiations between the parties had failed. Dkt. 78, at 1. Meanwhile, AMMD moved to have the Agreed Final Judgment Entry document enforced as a Rule 68 offer of Judgment, which the Court ultimately denied. Dkts. 81; 88.

### B. Procedural Posture

"[A] district court has inherent power to recognize, encourage, and when necessary enforce settlement agreements reached by the parties." *Bell v. Schexnayder,* 36 F.3d 447, 449 (5th Cir. 1994). A federal court sitting in diversity applies the law of the forum state when deciding whether to enforce a settlement agreement. *See Cavallini v. State Farm Mut. Auto Ins. Co.,* 44 F.3d 256, 266 (5th Cir. 1995). Since Texas law applies to this case, Texas Rule of Civil Procedure 11 controls. *See id.*; *Condit Chem. & Grain Co., Inc. v. Helena Chem. Corp.,* 789 F.2d 1101, 1102-03 (5th Cir. 1986) (applying Rule 11, nominally a procedural rule, because "[i]t is obvious from the nature of this Texas rule that it is a law of controlling substance"). Under Rule 11, a settlement agreement is enforceable only if it is (1) "in writing, signed and filed with the papers as part of the record" or (2) "made in open court and

entered of record." Tex. R. Civ. P. 11; *Estate of Martineau v. ARCO Chem. Co.,* 203 F.3d 904, 910 (5th Cir. 2000).

Under Texas law, when a party withdraws consent before judgment is rendered on the agreement, the party seeking enforcement of the settlement agreement may amend its pleadings to bring a breach of contract action against the non-settling party, and the judge may enforce the settlement as a written contract upon demonstration of proof. *Lefevre v. Keaty,* 191 F.3d 596, 598 n.1 (5th Cir. 1999); *Padilla v. LaFrance*, 907 S.W.2d 545, 461 (Tex. 1995); *Mantas v. Fifth Court of Appeals,* 925 S.W.2d 656, 658 (Tex. 1996). Under this procedural posture, "[i]f the settlement meets the requirements of Rule 11 and is an enforceable contract, it can be enforced by summary judgment." *In re Omni Video, Inc.*, 60 F.3d 230, 232 (5th Cir. 1995).

In this case, Vita-Gen withdrew consent before judgment was rendered in accordance with the alleged agreement, and AMMD's residual remedy is to attempt to enforce the parties' alleged agreement through a breach of contract claim. In this procedural posture the settlement agreement must meet the requirements of Rule 11 and an enforceable contract to be enforced by summary judgment.

### C.    Rule 11 Requirements

Under Rule 11, a settlement agreement is enforceable only if it is (1) "in writing, signed and filed with the papers as part of the record" or (2) "made in open court and entered of record." Tex. R. Civ. P. 11. The Texas Supreme Court has held that "'slavish adherence' to the literal language of the rule" is not necessary in all

cases. *Kennedy v. Hyde,* 682 S.W.2d 525, 529 (Tex. 1984) (identifying various exceptions to Rule 11) (internal citations and quotations omitted).

The Agreed Final Judgment Entry is written, and signed by AMMD's counsel and principal, Dr. Meyers. Dkt. 99-1, at 103. It was filed by AMMD along with Plaintiff's Response to Defendants/Counter Plaintiffs' Status Report Regarding (Alleged) Failed Case Resolution. Dkts. 79; 79-1, at 1-6. The Agreed Judgment Entry document in the record is not signed by Vita-Gen's principals; however, Yitzhak's electronic signature appears on the signature page. Dkt. 99-1, at 103. Vita-Gen argues that while "an attorney may sign an agreement on behalf of a principal client … the signature must purport to be on the principal-client's behalf, not the attorney's behalf." Dkt. 110, at 15. Vita-Gen cites no authority for this proposition.

In Texas, "'[t]he attorney-client relationship is an agency relationship[;] the attorney's acts and omissions within the scope of his or her employment are regarded as the client's acts[.]'" *Green v. Midland Mortg. Co.,* 342 S.W.3d 686, 691 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (quoting *Gavenda v. Strata Energy, Inc.*, 705 S.W.2d 690, 693 (Tex. 1986)). "Thus, an attorney may execute an enforceable Rule 11 agreement on his client's behalf." *Id.*; *Diaz v. Rio Grande Res. Corp.,* No. SA 05 CA 209 XR, 2006 WL 3337520, at *2'3 (W.D. Tex. Nov. 15, 2006) ("Thus, a retained attorney is presumed to possess express authority to enter into a settlement agreement on behalf of a client."). Further, "[a] court will generally indulge every reasonable presumption to support a settlement agreement made by a duly employed

13

attorney." *Bromeland v. Ramos,* No. DR-07-CA-021-AML\VRG, 2008 WL 11411270, at *6 (W.D. Tex. Mar. 26, 2008) (applying Texas law; internal quotations omitted).

It is reasonable to presume that Yitzhak had authority to enter into a settlement agreement and that her signature on her client's behalf renders the agreement enforceable under Rule 11. Texas courts, as well as Federal courts applying Texas law, have consistently reached the same conclusion. *See Green,* 342 S.W.3d at 691 (finding that the client's signatures on the settlement agreement were not required for the settlement agreement to be enforceable); *Gallien v. Wells Fargo Home Mortg. Inc.,* No. 01-17-00385-CV, 2019 WL 1246276, at *3 (Tex. App.—Houston [1st Dist.] Mar. 19, 2019, pet. denied) ("We note that [defendant's] attorney indeed signed the settlement agreement on its behalf. Its attorney's signature suffices under Rule 11."); *Bromeland,* WL 11411270, at *6 ("Despite the presence of only the signature of [defendant's] counsel, Texas state courts have upheld the enforceability of a settlement agreement where only counsel for the parties have signed the agreement."); *Crawford v. Allstate Texas Lloyd's,* No. 9:10-CV-127, 2011 WL 5041170, at *2 (E.D. Tex. Sept. 20, 2011) (federal court applying Texas law finding a valid and enforceable settlement agreement when the agreement was only signed by parties' counsel).

The undersigned finds that the July 1, 2022, Agreed Final Judgment Entry document complies with Rule 11's writing, signing, and filing requirements.

### D.   Contract Requirements

A valid and enforceable contract under Texas law requires: "(1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) a communication that each party consented to the terms of the contract; (5) execution and delivery of the contract with an intent that it be mutual and binding on the parties; and (6) consideration." *Owens v. Specialized Loan Servicing, L.L.C.*, 694 F. App'x 950, 953 (5th Cir. 2017) (internal citations and quotations omitted). "What constitutes an enforceable contract is a question of law for the trial court." *Adams v. Mut. of Omaha Ins. Co.*, No. 3:13-CV-4881-D, 2015 WL 1378720, at *2 (N.D. Tex. Mar. 26, 2015) (citing *Gaede v. SK Ins. Inc.*, 38 S.W.3d 753, 757 (Tex. App.— Houston [14th Dist.] 2001, pet. denied)). "In construing a written contract, the Court's task is to ascertain the intentions of the parties as expressed in the contract." *Marathon E.G. Holding Ltd. v. CMS Enters. Co.*, 597 F.3d 311, 316 (5th Cir. 2010) (internal citations omitted). In doing so, the court gives "the terms of a contract their plain, ordinary, and generally accepted meaning unless the contract shows them to be used in a technical or different sense." *Id.* (citing *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996)).

The parties here dispute (1) whether there was a meeting of the minds on the essential terms of the agreement, and (2) just what those essential terms were.

#### 1.   Meeting of the minds

Under Texas law, to determine whether there was a meeting of the minds, we look in an "objective fashion" for "what the parties actually said and did." *Gray L.*

*LLP v. Transcon. Ins. Co.*, 560 F.3d 361, 366 (5th Cir. 2009) (internal citations and quotations omitted).

In this case, the record shows that the parties wrote back and forth during a two-and-a-half-month period to arrive at terms by which both parties might agree to settle their dispute.[2] They came to an agreement on July 1, 2022, when Vita-Gen's counsel Crocker wrote to his co-counsel, Yitzhak and confirmed the Agreed Final Judgement Entry document, signed by AMMD's Dr. Myers, was final and asked Yitzhak to "get this over to Eric [Vita-Gen's principal] ASAP TODAY to execute on behalf of the Judgment Defendants." Dkt. 99-1, at 105-06. Yitzhak further confirmed the document was final and agreed upon on July 22, 2022, when she emailed Johnson to tell him "our client [Vita-Gen] is signing [the Agreed Final Judgment Entry document] shortly and I will email the agreement to file with the court." Dkt. 79-3, at 1.

The Agreed Judgment Entry document in the record, signed by counsel for both parties, and by Dr. Myers of AMMD, stipulates the parties' assent, stating, "that

---

[2] Vita-Gen has repeatedly represented that these communications were settlement negotiations "to determine whether the parties could come to a mutual meeting of the minds." Dkt. 83, at 2; Dkt. 102, at 7-8. In fact, this position was the basis of Vita-Gen's opposition to Plaintiffs' Motion for Entry of Rule 68 Judgment. *See* Dkt. 83, at 2 (stating "the May 6th correspondence was not a Rule 68 Offer of Judgment … even if the May 6th correspondence could be construed as a Rule 68 Offer of Judgment, AMMD rejected that offer on May 7th and correspondence between counsel after May 7th was simply settlement negotiations to determine whether the parties could ultimately come to a mutual meeting of the minds."). The communications in the record confirm the purported purpose of the negotiations. *See* Dkt. 83, at 3 (May 6 email with disclaimer that the communication was for "settlement purposes not to be used in litigation" and stating, "I spoke with our clients and they agreeable to a settlement of a judgment for 1.85M against both vita-gen entities… Please let us know by the end of the day if we have an agreement.").

they have entered into the Consent Judgment Entry in good faith, after consulting with Counsel of their choosing, and also based upon the Parties' own investigation, analysis and voluntary decision," and "the Consent Judgment Entry shall be binding upon the Parties." Dkt. 79-1, at 1-6. The undersigned finds that the communications between the parties as well as their conduct with regards to the Agreed Final Judgment Entry document demonstrate that there was a meeting of the minds between the parties.

### 2. Essential terms

While an enforceable contract requires a "meeting of the minds," not every "meeting of the minds" is a contract. *APS Cap. Corp. v. Mesa Air Grp., Inc.,* 580 F.3d 265, 271 (5th Cir. 2009). The minds may not have met on all essential terms. *Id.* The question of indefiniteness—whether an agreement reaches all essential terms of a given transaction—is one of law for the court. *Id.* "Under Texas law ... an agreement is not enforceable unless it resolves all essential terms and leaves no material matters open for future negotiation." *Id.* at 272. "In order to be legally binding, a contract must be sufficiently definite in its terms so that a court can understand what the promisor undertook." *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992). "[W]here an agreement leaves essential terms open for future negotiations, it is not a binding contract but, rather, an unenforceable 'agreement to agree.'"*Liberto v. D.F. Stauffer Biscuit Co.,* 441 F.3d 318, 323 (5th Cir. 2006) (footnote omitted).

Essential terms "are those that the parties would reasonably regard as vitally important elements of their bargain, an inquiry that depends primarily on the intent of the parties." *McCoy v. Alden Indus., Inc.*, 469 S.W.3d 716, 725 (Tex. App.—Fort Worth 2015, no pet.) (citation omitted). Though essential terms vary from contract to contract, they generally include "the time of performance, the price to be paid, ... and the service to be rendered." *Kirby Lake Dev. Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 838 (Tex. 2010).

Texas courts have long "held that the essential terms for a settlement agreement are the amount of compensation and the liability to be released." *Chowning v. Boyer*, No. 03-20-00387-CV, 2021 WL 3233859, at *6 (Tex. App.—Austin July 30, 2021, no pet.); *see, e.g.*, *MKM Eng'rs, Inc. v. Guzder,* 476 S.W.3d 770, 782 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (concluding that Rule 11 agreement contained all material terms because it contained payment terms and a statement that the parties will exchange mutual releases); *see Padilla*, 907 S.W.2d at 460-61 (finding all material terms of the agreement existed where terms included agreement to pay amount in exchange "for full and final settlement of this case"); *Cantu v. Moore*, 90 S.W.3d 821, 825 (Tex. App.—San Antonio 2002, pet. denied) (holding that settlement agreement contained all material terms when one party agreed to pay other party $150,000 and all parties agreed to execute full releases).

The Agreed Final Judgment Entry document, it provides that "Judgment Defendants now stipulate and consent to this Agreed Final Judgment Entry, to its prompt entry by the Court, and to each and every provision…herein" including: (1) "a

monetary judgment to AMMD on the AMMD claims in the amount of ONE MILLION EIGHT HUNDRED FIFTY THOUSAND DOLLARS ($1,850,000.00)"; (2) reimbursement of $31,696.00 "represent[ing] money paid by AMMD to Judgment Defendants in the form of a deposit, which belongs to AMMD"; (3) "judgment in AMMD's favor and against Judgment Defendants on the Counterclaims, and [dismissal] of the Counterclaims with prejudice"; (4) the parties' waiver of any and all right to appeal from the Consent Judgment Entry; and (5) stipulation "that the Consent Judgment Entry constitutes a final judgment on the merits of the Claims and Counterclaims." Dkt. 99-1, at 99-102.

While the Agreed Judgement Entry document includes terms such as judgment in favor of AMMD on its claims, dismissal of the counterclaims against it, waiver of the right to appeal the judgment, and payment to AMMD of $1.85M, it does not address the issue of release of claims, an essential term of settlement agreements.

It is unclear whether the release of the parties' claims was addressed by the parties' agreement. As to the issue of mutual releases, AMMD states:

> Yitzhak emailed undersigned counsel on May 6, 2022, offering the $ 1.85 Million judgment *in exchange for releases* in favor of Defendants and their principals, [AMMD's counsel] rejected that proposal stating: "… my understanding is that we were discussing a consent judgment entry and not a settlement agreement. With a consent judgment, [we] would not execute any releases."

Dkt. 104, at 3.

Johnson states that Yitzhak never responded to that email. *Id*. By arguing that he rejected the proposal for the execution of releases and stating that "had the Defendants demanded that AMMD execute releases in favor of the Defendants …

negotiations would have ended," Johnson appears to concede that release of the parties' claims was not an agreed-upon term. *Id.* at 3. Confusingly, Johnson states that the rejection email in which he stated, "[AMMD] would not execute any releases" came *after* Yitzhak's offer of $1.85 Million in exchange for releases.  Dkt. 100-2, at 2; 104, at 3. However, the record of the exchange shows that the purported release rejection email was sent *before* Yitzhak's offer email. *See* Dkt. 100-2, at 2 (showing that Johnson's email was sent at 10:47 am on May 6, 2022, and Yitzhak's email was sent at 12:30 pm on May 6, 2022).

If  Johnson's purported rejection email came after Yitzhak's offer of 1.85 Million in exchange for mutual releases, the release term was rejected, and Johnson's email was a counteroffer. *Hollywood Fantasy Corp. v. Gabor,* 151 F.3d 203, 208 (5th Cir. 1998) ("Under th[e] 'mirror image' rule, a modification of an offer qualifies as a rejection and counteroffer only if the modification is 'material.'"). On the other hand, if Johnson's purported rejection email came before Yitzhak's offer email, it's possible that Yitzhak's offer was a rejection and counteroffer whose release term became part of the agreement since it wasn't raised again, and the parties continued to refine the precise terms of the Agreed Judgment Entry. Neither party argues that mutual release was part of the agreement.

As the agreement between the parties stands now, it is insufficiently definite as to the term of mutual release. Since the issue of release is an essential term of settlement agreements and incumbent upon enforcement of the agreement as a contract, the undersigned finds that an essential term was left open for future

negotiations and that the agreement between the parties is unenforceable as a settlement agreement. *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992) ("Where an essential term is open for future negotiation, there is no binding contract."). AMMD, therefore, cannot meet an essential element of its breach of contract claim—the existence of a valid, enforceable contract.

AMMD's motion for summary judgment as to Count Five for breach of contract on the basis of the settlement agreement, should be denied. Vita-Gen's Motion for Partial Summary Judgment as to Count Five should be granted since AMMD cannot prevail on its claim.

## IV.        RECOMMENDATION

In accordance with the foregoing discussion, the undersigned **RECOMMENDS** that the District Court **DENY** AMMD's Motion for Summary Judgment, Dkt. 99, and **GRANT** Vita-Gen's Motion for Partial Summary Judgment as to Count Five of the Second Amended Complaint, Dkt. 100.

## V.        WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen days after the party is served with a copy of the Report shall bar that party from *de novo* review

by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED July 24, 2023.

_____
DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE